May it please the Court, I'm Andrew Pierce, representing Charles Guenther, the plaintiff and appellate in Guenther v. Lockheed Martin. This is a case about the statute of limitations under the ERISA statute. ERISA provides a six-year statute of limitations for a breach of fiduciary duty claim or three years from actual notice. Then it says, except in the case of fraud or concealment. I'm going to first argue fraud and concealment. I will then argue actual knowledge. Could I reverse you for a moment? Sure. Because the Supreme Court just granted cert in our case, the Sulema Intel Corp Investment Policy Committee v. Sulema, which was our circuit's best effort to summarize all of our actual knowledge. Jurisprudence would come out with some rule. So how does that affect our decision-making process here, given that the Supreme Court is going to give us direction on actual knowledge? Well, fortunately, the issue presented by the petition for cert in that case is almost the opposite of the issue in this case, and it's irrelevant. What the petition for cert says, and I read it quickly yesterday when I saw that cert was granted, was that the plaintiffs were given the plan documents and the plan amendments, and they said they didn't read them, and that's why they did not have actual knowledge. The facts in our case are quite different. My client was an ex-employee. He was never given the plan documents. I thought you relied on that case, didn't you? What? You relied on the Sulema case, didn't you, in your briefing, or at least in a submitted to court? I relied on the Sulema case. Yes, I did. Okay. So why shouldn't we wait for it? But the point that's being brought to the Supreme Court is not the point. So if Sulema is overruled, it will not be overruled on the grounds that we've said it. Counsel, is Judge Gould, if I could interject. Of course, you know, we never know exactly what the Supreme Court is going to say on a subject. If they're taking up Sulema, how can we be certain, I guess I would ask, that they're not going to say something that has an impact on what is actual knowledge in this case? To me, it seems sort of irrelevant if the facts of that case they're taking up involve a different issue. Once they open the subject, they can comment on our decision that you've relied upon, and they can blow us away if they want. Well, Your Honor, anything can happen, including another panel of this circuit or another case in another circuit that's very persuasive. All I can go on is – That seems different than the Supreme Court. I mean, I think that's sort of dismissive of the point that, yes, anything can happen, but now we have a case highly relevant, if not dispositive to this case, that the Supreme Court is considering. So would you have a problem with us just holding the case, I think, is the real question. Well, if the court finds that there was fraud or concealment, then you don't need to get to that issue, of course. All we need is one way to satisfy the statute of limitations. But if we didn't find fraud or concealment, would there be a detriment to your client if we just held the case pending the Supreme Court's outcome? When this case started, he was a middle-aged man working for Lockheed. Now he's a retired man who's got serious heart problems, and another year of delay would be a bad thing. We were all young when this case started in 2010. So I would prefer, obviously not, on behalf of my client, that we wait another year or however long it takes him to decide it. Can I ask you about fraud or concealment? Maybe this is where you're going now. Sure. I've read the two letters, the June letter and the November letter. Not the greatest clarity in the letters, but I'm trying to understand what the position is because I think it's been an assumption that the November 7th letter is fraudulent. And could we walk through that, and you could explain to me where the fraud or the concealment actually happens. Certainly. And that's what I was going to do, so that's great. Lockheed needed workers in 2006 to fulfill some contracts. They had changed their pension plan so that if they rehired their former workers, even ones who were vested in that pension plan, they could not get additional pension credit. They had a fiduciary duty to tell those people who were participants in the plan that they could not get additional pension credit, and we have expert testimony of that effect that was unrebutted. My client had applied before and had gotten additional pension credit after a long hiatus of employment. It would not have been good for them in hiring people to tell them, oh, by the way, you can't be in our pension plan anymore. Gunther brought it up specifically and was told, apply for pension bridging. That was concealment because he couldn't get pension bridging. They told him to apply. Well, but he was told that by the recruiters. Is that right, or was it the HR? Correct. And so I guess what I'm wondering is, I mean, you're running a large corporation like this. Whether they should know, that's one thing. They did know, Your Honor. They testified they knew. But they told him to apply. So your position is when they told him to apply, they already knew he couldn't get it. Correct. And so they were misleading and telling him that they thought he could. Yes. And then he applied. Let me just clarify. So in Barker, we define fraud or concealment basically to mean concealment, that the party has to affirmatively conceal an alleged fraud. So the original misrepresentation was that he could get bridging. So what steps did they take to affirmatively conceal the fact that they told him he could get bridging, and that was a misrepresentation? Okay. Again, the original fiduciary breach was not informing him they had changed their plan. A second breach, a second breach. So are you saying in 2005 when they changed the plan? Because that's not alleged anywhere in the complaint. Are you saying that that was a breach of the breach of fiduciary duties? Because it's not a misrep. He did allege that they failed to inform him before he was rehired. So it's not the 2005 when they changed the plan. That was perfectly legitimate. It's when they told him in 2006 that he could get bridging. Correct. So we're back to that original misrepresentation. So the question is, how did they conceal the misrepresentation? Okay. When he applied, well, first of all, again, the initial action was a breach of fiduciary duty and not telling him that he could not qualify for additional pension benefits. So they misrepresented to him that he could bridge when he was inquiring about rehiring. Yeah, and then they sent him a letter granting the bridging application. So that was a second act. And then they hired him. But that wasn't concealing the misrepresentation. That was just a second misrepresentation. Correct. It's fraud or misrepresentation. But we said it has to be concealment. So I'm trying to understand the concealment because the next step is they told him in November he understood that letter as saying you can't get bridging. You can get vested in this different type of plan, capital plan. Again, they had a fiduciary duty to tell him at least by the spring of 2006 when he was applying. Then they affirmatively misrepresented after the fact that he would qualify when he made the application. And they let him join the company. That's our take on it. We don't think a separate act needs to occur. But if it does, there was two stages to this, failure to disclose, then an affirmative act by telling him he would qualify for bridging. Now, I do want the amicus to have a chance to argue here. And we're going to be pressed for time. And she will argue about actual knowledge. All right. Good morning. May it please the Court, my name is Stephanie Bitto. I'm here today on behalf of the Secretary of Labor. The Secretary is here today only to discuss the problematic holding of the district court regarding actual knowledge. So maybe you can tell us your thoughts on the Supreme Court having granted cert in Suleyman. The government doesn't take a position on the Suleyman case at this juncture. However, the case is distinct in both legal principles and facts, such that it should not keep it. But if the government is here arguing, the Solicitor General is going to file a brief, I assume. I mean, maybe you can't commit to that. But it wouldn't be unreasonable to assume that the government's position is going to be heard by the Supreme Court. I'm not in the position. So regardless, the petition in Suleyman, the petitioner in Suleyman, is arguing that the Ninth Circuit got its analysis of actual knowledge wrong, that our definition of it is wrong. And, of course, as opposing counsel points out, they're urging the Supreme Court to take the Sixth Circuit's view that actual knowledge is actually constructive knowledge. We don't know how the Supreme Court will rule, but we do know it will tell us what actual knowledge means for purposes of 1113, for the statute of limitations. So how can we rule on that issue with the Supreme Court case pending, the very case that counsel is relying on to say what actual knowledge is in our circuit? Your Honor, ERISA's 3-year statute of limitations only begins to run on the date that the plaintiff has actual knowledge of the breacher violation. And under any standard of that, with the exception of constructive knowledge, the plaintiff here did not have that actual knowledge. Yes, he had actual knowledge. So I find that position a little bit confusing, because the plaintiff in this case says, yes, I knew when I got the November e-mail that they weren't putting me into the original pension plan, and in fact, I checked online and saw that no more was accumulating. So I understood what it meant. So in this case, it seems particularly bad for saying that the individual doesn't have actual knowledge, even if somebody else might not have it. Your Honor, it's our position that the plaintiff here did not have actual knowledge. He admitted that he understood what the letter said. But knowing what the letter says is different than understanding which of the two letters was the misrepresentation. But that seems to be relying on the Salima case and even perhaps stretching it, and I guess that goes back to why don't we hold it. I mean, you talked about constructive knowledge. The Salima case specifically we specifically recognized a circuit split with the Sixth Circuit, which held constructive knowledge was enough. What if the Supreme Court adopts constructive knowledge based on the Sixth Circuit? Wouldn't that undermine this case here? Yes. And did the Department of Labor argue in the Sixth Circuit case that they were going to get it wrong, or did you support a petition for rehearing en banc to argue that the constructive knowledge standard was incorrect in that case? I apologize, Your Honor. I do not know what our position was in that case, or if we even took one. I think while under any stretch outside of constructive knowledge. Which the Supreme Court, I guess, could adopt the Sixth Circuit view, I think, since there is a circuit split, as Judge Nelson says. So under you agree that if the Supreme Court adopts a Sixth Circuit interpretation of the statute, then Mr. Gunther had actual knowledge?  We do not take a position on that. So you think even a constructive knowledge standard like the Sixth Circuit has adopted, he didn't have it? Our briefing did not include a discussion of whether or not he had constructive knowledge. But we would argue here that constructive knowledge alone does not suffice for actual knowledge, particularly not when a plaintiff is faced with two conflicting pieces of information. It's not possible for a plaintiff who is given two letters that say opposite things to know which one embodied the misrepresentation that is the basis of the future case. Judge Gould, if I could interject a question, please. Yes, Your Honor. So I hear what you're arguing, but I keep thinking, wouldn't it make more sense to let the Supreme Court make its decision and then you and all the parties can write detailed briefs with a considered position in light of whatever the court says? And then we can assess that. If we need that to be reset for re-argument, we could do that. I know there's some delay, but it's really a consequence of the Supreme Court taking cert. Yes, Your Honor. I would just like to, again, repeat that the Department's position here is that two conflicting communications cannot provide actual knowledge of a misrepresentation under ERISA because the plaintiff is not aware of what the misrepresentation was. And I'd like to reserve time for rebuttal. Thank you. Okay. Morning, Your Honors. May it please the Court, Clarissa Kong for Lockheed Martin Corporation and the Lockheed plan. Mr. Gunther filed his complaint too late. As the Court recognized this morning, he did have actual knowledge. He had actual knowledge by November 2006 that he was not accruing additional credited service for his employment. Can I ask a question? And maybe this could be addressed in rebuttal as well. Does Lockheed concede that the June letter and the November letter were inconsistent with each other or conflicting? Because I'm not entirely sure that they were. No, Lockheed does not. In fact, the question of whether Mr. Gunther received bridging in the way that Lockheed conceives bridging, it's accurate that he did receive bridging. On his reemployment with Lockheed, the bridging was useful for vacation, service awards, immediate investing in the capital accumulation plan, a different plan, and also the pay scale for his then current period of employment could be used towards calculating his pension benefit. So in that respect, Mr. Gunther did receive bridging. The July letter was accurate. And that was repeated in the November letter, and it is accurate that he did receive bridging. It seems to me, and thank you for your explanation, because that's sort of how I viewed it, was that bridging is separate from whether he's still covered by the pension plan that he apparently was told that he would be covered by. And that's a separate problem that I think Lockheed has, is you apparently had recruiters that were giving inaccurate information to potential recruits. And I think that's also a point that Lockheed has not conceded. It is not clear from the record, especially on a motion for summary judgment, that the recruiters had misrepresented the state of affairs. They are not the HR folks. They are not benefits folks. They don't have the ability to say whether or not a participant would receive accrued credited service in the plan. In fact, when on deposition, Mr. Gunther had said that the recruiter did not say whether or not he would be entitled to bridging, that the recruiter had given him a form to complete in order to find out whether bridging would be granted. But I will say, and this is, you know, as a judge who's been a former general counsel who's read these letters, I think I sort of sussed out some of these differences. But I can understand Mr. Gunther's complaint here. I mean, Lockheed would have to acknowledge that the June letter was not as fulsome in disclosure as it could have been. And the reason for that is that Mr. Gunther had not even come back to Lockheed yet. That first letter is a preliminary letter. In fact, it states in the letter itself that Mr. Gunther would have to reapply for bridging upon reemployment. When he submitted the bridging request, he had not. But the assumption was, and I think reading the June letter, it's easy to see why someone would assume that they, you know, might think that they were entitled to bridging in the larger sense that they were going to have continued accruement under the same plan. And that is how Mr. Gunther read that letter. And apparently how others read it, too, it sounds like. And that's not, I guess the question here today is whether the statute of limitations began running. And even assuming that Mr. Gunther did not understand the June letter in the way that Lockheed meant it to state with regard to bridging, by the time he comes back to employment and logs on to his account, he's seeing that there is no accrued accredited service for his employment. Then he gets a letter in November. And that letter states that his reading of that letter is that he understands that it is, quote, completely opposite from the July letter, June letter. Let's assume for a minute that the letter, the original statements made to Mr. Gunther in the letter constituted misrepresentations about the state of the plan and whether he could get credit in the original benefits plan. Can you walk me through your view as to why the six-year statute of limitations for fraud or concealment is not triggered? Your Honor, the gravamen of Mr. Gunther's complaint is that he was told that he could bridge, meaning that his understanding was that he could get accrued accredited service upon reemployment. And that was a key factor in his decision to be rehired. He states that it is, and he relied on that July letter. At his deposition he also testified that there were no other communications on which he relied to have communicated that he would be accruing accredited service under the plan. Then the operative breach of fiduciary duty is an alleged misrepresentation in the July letter. It isn't the plan amendment that occurred in 2005. It's the letter that he receives in July that then causes the injury that he's claiming here. And under the Ninth Circuit's case in Gabriel, surcharge requires a causation and harm. And the causation and harm in this alleged breach of fiduciary duty arises from the July letter. There is no later concealment of the fact that he is not receiving accredited service under the plan. When he returns to Lockheed in September, he logs on to his pension account three times in September, once in early October, to check whether he's receiving accrued accredited service. He doesn't see that he is. Then he gets a letter in November where in his deposition he states that the November letter told him that he was not able to accrue accredited service and that his understanding of the July letter was incorrect. He stops logging into his account in November and December, and the reason for that, he states in his deposition testimony, is because he received the November letter. There isn't any concealment of the fact that he is not receiving accredited service under the plan. I wanted to address the point. Counsel, it's Judge Gould. If I could ask you a question I asked your colleagues on the other side of the case. What is Lockheed's position as to whether we should hold our decision pending the Supreme Court's decision in the case on which they granted cert and have supplemental briefing thereafter and like that? It's our position that there is no need to hold the case, our case, the Gunther case. The reason for that is that the petition for cert talks about the circuit split between the Ninth Circuit's decision in Selima and the Sixth Circuit. The Sixth Circuit was a constructive knowledge type standard as opposed to an actual knowledge standard. It equated actual knowledge to more of a constructive knowledge in that if a participant receives communications informing them of the underlying facts that could be the basis for a breach of fiduciary duty claim, that whether or not the statute limitations. Here, Mr. Gunther received the November letter. He testified at his deposition that he read and understood it. That's one distinguishing factor from Selima. The other thing is that we're not just talking about two letters in July and November. We're not just talking about a discrepancy between those two letters. We're also faced with a case where Mr. Gunther is logging into his account multiple times in September and October and seeing that he is not receiving accrued credited service. This is a case that under the actual knowledge standard before Selima, after Selima, and under the Sixth Circuit standard, it's clear that Mr. Gunther had actual knowledge that would have caused the statute of limitations to start running. So if I understand you, you're saying that under any standard the Supreme Court dreams up for actual knowledge, Mr. Gunther would have actual knowledge? Correct, Your Honor. The facts here are such that Mr. Gunther was aware that he had a potential claim upon receiving the November 2006 letter. But there is, and maybe it's stretching Selima further than the weight will notwithstanding all this evidence, and they seem to contest the discrepancy on the June and the November letters, there still wasn't any actual knowledge of what the plan was that he was on. And I'd like you to address that because my understanding is even though the plan was amended in 2005, those plan amendments weren't put out to the employees until 2008. And I don't know if I have my facts right on that, but I'd be interested in hearing what you have to say. It is not correct that the employees did not have notice of the amendment. The amendment occurred in 2005. Employees, including former employees, anyone who was a participant in the plan received a mailer. In this case, it would satisfy the requirement that plan sponsors or plan administrators have to issue a summary of material modifications. The summary of material modifications was included in our supplemental excerpts of record. And it was a communication. Do you have the site for that? Not at the moment. Okay. But it was referenced in our brief. Okay. The requirement under ERISA to have a fully restated plan or a summary plan description could be that a summary plan description does not have to be generated in the year that the amendment occurs. Instead, the amendment is announced through a summary of material modifications. When the plan was restated, it incorporated all of the plan amendments that had occurred prior to that restatement date. If Mr. Gunther had asked for a copy of the plan or the summary plan description, he would have been given a copy of the plan as it was at the time, including any amendments. So it's not that the participants were never informed of the change in the plan. In fact, the media covered the change in the frozen defined benefit plan. No, I saw the media references. But is it true? So your position is Mr. Gunther could have asked for it, and he would have received it. And apparently that didn't happen. But if he were to log into his account and try and look at the plan, that was not restated until 2008. Is that correct? Yes. I don't know the date of the restatement, but the plan amendment would have been posted as well if there was a way to. So there was a plan amendment. When he was hired on, there was a plan amendment that was posted in the materials that he would have been able to access online. Yes, there was a plan amendment in 2005. It was signed and actually would have been provided to participants. Whether or not it was on an intranet for employees, that is not in the record. Well, I thought it was in the record. I mean, that's why I'm asking, because I had thought that it was in the record that it wasn't available until 2008 on the intranet. And I don't know that this is dispositive, but it's a fact that I would like to nail down so I have a full understanding of what's at issue. Correct. It was available to participants whether or not it was posted or whether it was on the intranet. I don't believe that that is part of the record. But in any event, the impact to Mr. Gunther of the plan amendment was apparent by the fact that he was logging into his account in September and October of 2006 and seeing no accredited service. He also received a November letter where it is clear that the impact of that amendment is shown to him in his understanding that the July letter didn't mean what he thought it meant. Why didn't you say what you said in the November letter in the July letter? Your Honor, the July letter was a preliminary letter. Mr. Gunther had not returned to employment. And, in fact, it wasn't clear whether he would be offered employment. Well, yeah, but I mean in November you write that, hey, by the way, you're not going to get credit for your current service. Why wouldn't you say the same thing? You knew that was the case. Why wouldn't you say it in the June letter to say you're bridged as far as that goes, but guess what, we have a new plan and here it is. And I think at that point it was because Mr. Gunther had not returned to employment. And the letter that he received in November does state in response to his second bridging request, which was required by him to submit. Well, but if you weren't anticipating that he would come back to employment, there would be no reason to talk about bridging because he wouldn't have bridged. I mean, bridging only comes up if you're thinking about rehiring him, doesn't it? Correct. And at that point the participants had also received the summary of material modifications announcing the plan amendment. Thank you, Your Honors. I believe my time is up. It is over. Thank you. You have a couple of minutes for rebuttal. I'll try to address the points the Court made. First of all, on the question of what bridging means, that was argued in the trial court by Lockheed. They said we didn't promise what he thinks we promised him. We presented expert testimony and other evidence and legal argument to the fact that bridging would mean, in this context, the most important aspect continuing to get a pension credit. The Court did not grant summary judgment. There was a tribal issue of fact on that point, and there was expert testimony. Second of all, the recruiting officials were participants in the plan themselves. They knew it had been changed. Third of all, the form that was sent out to current employees explaining the plan to my client, there was zero evidence. It was mailed to him. There was no list of people it was mailed to. There was no indication of what the form letter would have been. None of that exists. There was no evidence that it was available to him online as a non-employee. Am I making up this 2008 date? Or did I read that somewhere? 2008 is when they restated the plan. That is absolutely correct. So the plan, the old plan, the one we got in discovery, wasn't changed yet. The 2008 plan, I think it was 2008, did contain the restatement. Is there any evidence? There was an amendment that would be tacked on the back. Okay. So if he had accessed it on the intranet, there would have been an amendment even when he started in 06, 07. It's speculation. Okay. We don't know that. There's nothing in the record to indicate that. Correct. With regard to whether the July letter was appropriate or not, their own witnesses acknowledged it did not say what it should have said. Finally, we did plead nondisclosure of the plan as a fiduciary breach. Not the plan amendment. They were allowed to amend the plan, and this Circuit has already decided that previously. What we alleged was by not disclosing it to him, that was a fiduciary breach, and that that breach was concealed by sending him the letter purporting to offer him bridging. All right. I think we have your arguments. Thank you. We thank both parties. In the case of Charles Gunther v. Lockheed Martin Corporation,
judges: Gould, Ikuta, Nelson